**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| DERSE, INC., <br><br> Plaintiff, <br><br> v. <br><br> STEVEN SOTELO, <br><br> Defendant. | Case No. 25-CV-976-JPS <br><br> **ORDER** |

## 1. INTRODUCTION

In July 2025, Plaintiff Derse, Inc. ("Derse") sued Defendant Steven Sotelo ("Sotelo"), a former employee, for breach of contract. ECF No. 1. In November 2025, Sotelo brought a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), for a lack of constitutional standing and for failure to state a claim respectively. ECF No. 17. As no reply brief was filed, the Court considers the matter fully briefed. ECF Nos. 17-1 and 21. Following the completion of briefing, Sotelo's counsel filed a motion to withdraw. ECF No. 22. As explained below, the Court is obligated to grant Sotelo's motion to dismiss for lack of standing. As a result, it will deny as moot Sotelo's motion to dismiss for failure to state a claim upon which relief can be granted. The Court will give Derse leave to amend. The Court will deny without prejudice Sotelo's counsel's motion to withdraw. If no amended complaint is filed, the case will be dismissed without prejudice.

## 2. ARTICLE III STANDING

Federal courts have an independent "obligation to assure [themselves]" that plaintiffs have Article III standing. *LJM Partners, Ltd. v.*

*Barclays Cap., Inc.*, 165 F.4th 552, 565 (7th Cir. 2026) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006)).

"For Article III standing, a plaintiff must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Id*. (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "At the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Id*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "[T]he party invoking federal jurisdiction . . . bears the burden of establishing that standing exists." *Id*. (citing same). For Derse's case to survive, Derse must show that it "has standing to seek either injunctive relief or damages, or both." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017); ECF No. 1 at 16 (also seeking both injunctive relief and monetary damages).

"To have standing for prospective injunctive relief, a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" *Id*. (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) and *Sierakowski v. Ryan*, 223 F.3d 440, 444–45 (7th Cir. 2000)). "Unlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief: 'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Id*. (quoting *Lyons*, 461 U.S. at 95–96 and citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

## 3. FACTUAL ALLEGATIONS[1]

Derse is "an experimental marketing agency" in the "business of designing and building exhibits for trade shows, conferences and events." ECF No. 1 at 2. Among other locations, Derse conducts business in the Las Vegas metro area. *Id*. at 3. Sotelo began his employment with Derse in spring 2022 as a project manager and within a few months, he was promoted to Manager, Project Management. *Id*. As a condition of Sotelo's employment, he signed a "Restrictive Covenant Agreement" ("Agreement"),[2] preventing him, in relevant part, from using or disclosing "Confidential Information," such as its strategies, customers, and products, in the two years following the termination of his employment—a prohibition that does not extend to Sotelo's "use of general skills and know-how acquired during and prior to employment with Derse." ECF No. 1-1 at 2, 4. The Agreement also prevents Sotelo, for eighteen months following his last day with Derse, from performing job functions in Las Vegas, Nevada that he used to do or otherwise oversee while at Derse. *Id*. at 3, 6; ECF No. 1 at 8. According to Derse, Sotelo's role afforded him access to sensitive information, such as marketing strategies, raw data, and Derse's customers.

---

[1]Here, because Derse makes only a facial challenge to the complaint, as opposed to a challenge that there, is, in fact, no jurisdiction, the Court "looks to the complaint," ECF No. 1, the factual allegations of which are taken as true, to "see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Apex Digit. v. Sears, Roebuck, & Co*., 572 F.3d 440, 443 (7th Cir. 2009) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). Because Derse does not agree, ECF No. 21 at 1, with Sotelo's characterization that the document as ECF No. 17-2 constitutes the parties' joint statement of jurisdictional facts in fulfillment of the protocols, ECF No. 3 at 4, the Court draws the facts *only* from the complaint.

[2]A complaint is deemed to include documents attached to it as an exhibit or documents incorporated in it by reference, which in this case, is the Agreement. *Bankcard Am., Inc. v. Universal Bancard Syst., Inc*., 904 F. Supp. 753, 757 (N.D. Ill. 1995) (citing *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985)).

ECF No. 1 at 10, 12. Such information was "accessible only to a limited number of Derse employees with controlled access permissions." *Id*. at 10.

In May 2025, Sotelo wrote an email to Derse indicating that he had received a job offer elsewhere, and subsequently left Derse in June 2025 for a rival company called Impact XM, whose office was less than one mile away from Derse's Las Vegas office. *Id*. at 3, 13. In turn, Derse has brought this action for breach of contract. *Id*. at 15.

## 4. ANALYSIS

The Court starts by addressing Derse's standing to seek injunctive relief. *See infra* Section 4.1. It then turns to Derse's standing to seek monetary damages. *See infra* Section 4.2.

### 4.1 Standing to Seek Injunctive Relief

Because past harm alone is not enough to confer standing for injunctive relief, *see supra* Section 2, the Court starts by analyzing the second requirement, namely whether "there are any continuing, present adverse effects." *Simic*, 851 F.3d at 738 (citations omitted). While Derse provides a litany of past harms, which the Court will evaluate *infra* Section 4.2, Derse, as demonstrated below, provides nothing more than inapt case law and speculation as to future injuries, falling well short of establishing standing to seek injunctive relief.

Derse's first argument as to why it will suffer an immediate, future harm is wanting: Derse "is not aware, nor has Sotelo cited any Seventh Circuit decision in which a [p]laintiff was found to have no standing to seek enforce[ment] of a valid restrictive covenant agreement for . . . injunctive relief." ECF No. 21 at 6–7. Inexplicably, rather than provide a series of cases that support his position, Derse cites to a case from the District of West Virginia which, based on Derse's own Bluebook signal, ostensibly supports

Sotelo's position. *Id*. (citing *O'Sullivan Films v. Neaves*, No. 5:17-CV-00031, 2017 WL 4798997, at *4 (W.D. Va. Oct. 24, 2017) (using "*But see*" as the signal). In any event, the Court is not bound by a district court decision from another circuit. *United States v. Mitchell*, No. 03-40021, 2021 WL 462123, at *5 (C.D. Ill. Feb. 9, 2021).

The only Seventh Circuit authority Derse cites is *Dinerstein v. Google*, 73 F.4th 502 (7th Cir. 2023). In that case, the Seventh Circuit noted that, in the data breach context where courts have often found standing, a "motivating" consideration has been the "common-sense observation" that "hackers steal private credit-card information for a primary purpose: 'to make fraudulent charges or assume . . . consumers' identities.'" *Id*. (quoting *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015) and citing *Lewert v. P.F. Chang's China Bistro, Inc*., 819 F.3d 963, 968 (7th Cir. 2016)). By extension, Derse argues that the Court should find that it is common sense to assume that Sotelo "is likely to use and disclose Derse's confidential information," as "this is precisely what made him an attractive hire for Derse's competitor[,] [Impact XM]." ECF No. 21 at 11.

However, in this case, the analogy does not follow, as Derse's argument assumes that Sotelo is a criminal or at least, that his character is at issue, which none of the other allegations substantiate. *See generally* ECF No. 1. The Court, moreover, declines to read in a presumption that the reason Sotelo was an attractive hire to Impact XM was that he brought with him Derse's confidential information, as opposed to his general industry expertise. *See* ECF No. 1-1 at 4 (indeed, the parties' prohibition in the Agreement on the use of such information does not extend to Derse's "use of general skills and know-how acquired during and prior to employment with Derse"). Put differently, the insinuation that he could not perform in

his new role, however similar, without disclosing or using confidential information from Derse is not inferable from the other allegations. Finally, Derse stops short of alleging that Sotelo used or disclosed confidential information in his new role. ECF No. 1 at 14 ("With access to the confidential and proprietary information . . . , Sotelo *could* easily identify clients or client prospects susceptible to poaching based on past shortfalls in service, budgeting, products or marketing strategies") (emphasis added); *id*. at 15 ("While Sotelo possesses information which *would* permit him to unfairly compete against Derse in many markets, *if* Sotelo employed his knowledge about Derse's customers and business to shift only 5% of Derse's sales in just the Las Vegas market to Impact XM, it will represent a shift of approximately $ 2,150,000 in revenue over the course of one year, seriously injuring the business of Derse") (emphasis added). Indeed, Derse "offers little more than speculation and assumptions—and importantly, 'no specific facts'—that [its confidential information] would actually be [disclosed]." *Dinerstein*, 73 F.4th at 515 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013)). This chain of speculation is insufficient to establish standing for injunctive relief. *Id*.

Defendant's remaining argument as to why it faces imminent injury fares no better, as it rests on the "competitor standing" doctrine, which does not apply here. ECF No. 21 at 7 (citing *Lexmark Int'l, Inc. v. Static Control Components*, 572 U.S. 118, 125–126 (2014)).[3] Indeed, all the competitor

[3] In fact, the *Lexmark* case did not even apply the competitor standing doctrine to its own facts; although Derse places quotes around the phrase "competitor standing" to suggest that the *Lexmark* Court used the doctrine, the *Lexmark* Court never relied on the doctrine, nor did it ever use the phrase "competitor standing." *See generally* 572 U.S. 118. Rather, the *Lexmark* Court decided the very narrow issue of "the appropriate analytical framework for determining a party's standing to maintain an action for false advertising under

standing cases that Derse cites in support—*Citizens for Resp. & Ethics in Wash. v. Trump*, 939 F.3d 131, 143 (2d Cir. 2019), *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2004), and *Cooper v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 738 (5th Cir. 2016)—involve a government actor.[4] This is no mistake—the doctrine's application is so confined. *Sherley*, 610 F.3d at 261 ("The doctrine of competitor standing addresses the first requirement by recognizing that economic actors 'suffer [an] injury in fact when [governmental] agencies lift regulatory restrictions on their competitors or otherwise allow increased competition' against them." (quoting *La. Energy & Power Auth.*, 141 F.3d 364, 367 (D.C. Cir. 1998) and citing *New World Radio, Inc. v. F.C.C.*, 294 F.3d 164, 172 (D.C. Cir. 2002) and *Canadian Lumber Trade All. v. United States*, 517 F.3d 1319, 1332 (Fed. Cir. 2008)); *Trump*, 939 F.3d at 143 (citing *Canadian Lumber Trade All.*, 517 F.3d at 1332; *Cooper*, 820 F.3d at 738; *Sherley*, 610 F.3d at 72; and *Kerm Inc. v. F.C.C.*, 353 F.3d 57, 60 (D.C. Cir. 2004)); *Canadian Lumber Trade All.*, 517 F.3d at 1332 (analyzing "whether the Court of International Trade was correct to invoke the doctrine of 'competitor standing,' which relies on economic logic to conclude that a plaintiff will likely suffer an injury-in-fact when the government acts in a way that increases competition or aids the plaintiff's competitor"). As there

---

the Lanham Act," a statute which is not even at issue here. *Id*. at 125 (internal citations omitted). In any event, the *Lexmark* ruling did not furnish a detailed analysis of whether there was constitutional standing (as opposed to prudential standing), so the Court does not consider *Lexmark* informative here. *Id*. at 125–26 ("Lexmark does not deny that Static Control's allegations of lost sales and damage to its business reputation give it standing under Article III to press its false-advertising claim, and we are satisfied that they do.").

[4]Because it is not obvious from the caption in *Sherley* which government actors were sued, the Court notes that it was the "Department and the Secretary of Health and Human Services and the National Institutes of Health and its Director." *Sherley v. Sebelius*, 610 F.3d 69, 70 (D.C. Cir. 2004).

is no government actor in this case, the Court considers Derse's argument that the doctrine applies here inappropriate, and, therefore, rejects it. That being the case, the Court finds that Derse has not carried its burden to show that it has standing to pursue injunctive relief. *Barclays Cap., Inc.*, 165 F.4th at 565.

### 4.2 Standing to Pursue Monetary Relief

The Court now turns to whether Derse has standing to pursue monetary relief. In this case, Derse asserts that it suffered "lost goodwill," "potential lost business opportunities," "lost employees," and a "disadvantaged market position." ECF No. 1 at 16. Second, Derse asserts it suffered "the loss of benefit from the Agreement, considering his acceptance was expressly conditioned upon his acceptance of the terms of the Agreement." *Id*. The Court will address each set of injuries in turn.[5]

As to the first set of harms Derse recites, they are without any factual support. To begin, Derse's allegations "point to no definite reasons" to suggest that Sotelo's activities with his new firm "tarnished the company's goodwill, affected its future business prospects, or lessened its position" in the marketplace. *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 880 (7th Cir. 2020) (noting "it is not enough to say your reputation was harmed without explaining how" (citing *Johnson v. U.S. Off. of Personnel Mgmt.*, 783

[5]In its opposition brief, Derse also alleges that its mitigation efforts (from having to ensure its secrets were not divulged) support its standing to pursue monetary relief. ECF No. 21 at 8 (citing *Remijas v. Neiman Marcus Grp.*, LLC, 794 F.3d 688 (7th Cir. 2015)). However, since these efforts are not alleged in its complaint, the Court cannot consider them. *Perry v. Village of Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999) ("Perry's complaint does not allege that he owned an automobile; therefore, the district court properly found that he did not have standing . . . ."); *see generally* ECF No. 1 (nowhere mentioning mitigation or mitigation strategies); *see supra* note 1.

F.3d 655, 669 (7th Cir. 2015)). Derse does not point to one business opportunity that it missed out on nor one Derse employee that left after Sotelo did, let alone identify one whom Sotelo poached. *See generally* ECF No. 1; *Miessen Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 707 (N.D. Ill. 2014) (finding that there was standing where plaintiff alleged that the defendant "took th[e] confidential and proprietary information" he had access to, "shared it with h[is] new employer," and furnished this information "to secure a contract" that resulted in the "dismantl[ing]" of one of plaintiff's "business relationship[s]."). Again, Derse points only to speculation. *See supra* Section 4.1 (citing ECF No. 1 at 14, 15).

"What's left, then, is [Derse's] argument that a breach of contract is itself a legally cognizable injury in fact." *Dinerstein*, 73 F.4th at 518. However, the Seventh Circuit has explicitly ruled that it is not. *Id*. Derse's "loss of benefit of its bargain with Sotelo," ECF No. 21 at 5, "at most" establishes "an injury at law, which . . . 'is not an injury in fact.'" *Dinerstein*, 73 F.4th at 518 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021)).[6] Derse "cannot simply allege a bare breach of contract, 'divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (quoting *Robins*, 578 U.S. at 341). Yet, that is exactly what

[6]The Court notes that Derse's remark that this issue is disputed "amongst federal circuits," ECF No. 21 at 10, is misleading as it fails to mention that the Seventh Circuit, the Circuit in which this Court sits, has squarely resolved the issue. Derse's remark is particularly concerning because *Dinerstein*, the case which Derse cites repeatedly, notes as much as shown above. The Court also points out that it is concerning that Derse cites the portion of *Dinerstein* that addresses the invasion of privacy claim rather than the breach of contract portion, which is the relevant analysis here. ECF No. 21 at 10 (citing *Dinerstein*, 73 F.4th at 514–16). To that latter point, the Court treats Derse's arguments based on *Dinerstein* waived. *Kibbons v. Peloso*, No. 25-1390, 2025 WL 3565846, at *4 (7th Cir. Dec. 12, 2025) (concurring with magistrate's disregard of cases that were cited that did not relate to the claims at issue).

Derse attests. ECF No. 1 at 15–16 (alleging the various provisions of the Agreement of which Sotelo is in violation). For the foregoing reasons, the Court finds that Derse has not carried its burden to show that it has standing to pursue monetary relief. *Barclays Cap., Inc.*, 165 F.4th at 565.

**5. CONCLUSION**

The Court is obligated to grant Sotelo's motion to dismiss for lack of standing, dismiss the complaint, and deny as moot Sotelo's motion to dismiss for failure to state a claim upon which relief can be granted. However, because Seventh Circuit precedent imposes a liberal standard of allowing plaintiffs leave to amend, the Court will permit Derse to file an amended complaint. *Mladenov v. R1 RCM Inc.*, No. 21-cv-1509, 2022 WL 226014, at *4 (citing *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510 (7th Cir. 2015)). Derse is given leave until **September 24, 2026** to amend its complaint so long as it can do so consistent with this opinion, Seventh Circuit precedent, and the Federal Rules of Civil Procedure. Absent an amended complaint, the Court will dismiss this action without prejudice for lack of standing. *Chuluunbat v. Weltman, Weinberg & Reis Co., LPA*, No. 21-1584, 2022 WL 1599325, at *2 (7th Cir. May 20, 2022) ("A dismissal for lack of Article III standing is necessarily without prejudice." (citing *White v. Ill. State Police*, 15 F.4th 801, 808 (7th Cir. 2021)). In the interim, the Court will deny counsel's motion to withdraw, ECF No. 22, without prejudice. Should an amended complaint be filed, defense counsel shall file either a responsive pleading or a renewed motion to withdraw within twenty (21) days of Plaintiff's filing of the same. Any renewed motion to withdraw shall include updated information for the Court's consideration; the filing of such a motion will stay the responsive

pleading deadline pending further order of the Court. Defense counsel must provide a copy of any renewed motion to withdraw to Defendant.

Accordingly,

**IT IS ORDERED** that Defendant Steven Sotelo's motion to dismiss Plaintiff Derse, Inc.'s complaint for lack of standing, ECF No. 17, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff Derse, Inc.'s complaint, ECF No. 1, fails for lack of standing;

**IT IS FURTHER ORDERED** that Defendant Steven Sotelo's motion to dismiss Plaintiff Derse, Inc.'s complaint for failure to state a claim, ECF No. 17, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendant Steven Sotelo's counsel's motion to withdraw, ECF No. 22, be and the same is hereby **DENIED without prejudice**; and

**IT IS FURTHER ORDERED** that on or before **September 24, 2026**, Plaintiff Derse, Inc. shall **FILE** an amended complaint consistent with this opinion, Seventh Circuit precedent, and the Federal Rules of Civil Procedure; failure to do so by this deadline will result in the Court dismissing the case without prejudice. Should an amended complaint be filed, defense counsel shall file either a responsive pleading or a renewed motion to withdraw within twenty (21) days of Plaintiff's filing of the same. Any renewed motion to withdraw shall include updated information for the Court's consideration; the filing of such a motion will stay the responsive pleading deadline pending further order of the Court. Defense counsel must provide a copy of any renewed motion to withdraw to Defendant.

Dated at Milwaukee, Wisconsin, this 3rd day of September, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge